IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE: LATOYA SHANELLE NORWOOD
DEBTOR

CASE NUMBER 08-14315-DWH
CHAPTER 13 PROCEEDING

AMERICAN MANUFACTURED
HOUSING SERVICES, INC.

SECURED CREDITOR/MOVANT

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR ABANDONMENT OF PROPERTY OR, ALTERNATIVELY, FOR ADEQUATE PROTECTION

Comes now AMERICAN MANUFACTURED HOUSING SERVICES, (hereinafter "AMHS"), a Secured Creditor and party in interest in this cause, by and through its attorney, and moves this Court to modify the automatic stay and to abandon property or, alternatively, for adequate protection pursuant to 11 U.S.C. §361 and §362.

### JURISDICTION

1. This Court has jurisdiction over this proceeding pursuant to Title 28 U.S.C. §157(b)(2)(G) and 11 U.S.C. §361 and 11 U.S.C. §362. This is a core proceeding.

2. AMHS is a Tennessee domestic corporation with its principal office in Millington, Tennessee.

3. Debtor is an individual residing in Walls, Mississippi.

### PROCEDURAL HISTORY

4. On October 17, 2008, Latoya Shanelle Norwood, (hereinafter "Debtor"), filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. §101, et seq, and on November 5, 2008 an Order was entered in this Court confirming the Debtor's plan, awarding a fee to Debtor's attorney and related orders.

AMHS is listed as a secured creditor and by operation of 11 U.S.C. 362 and 1301. AMHS is prohibited from commencement of any judicial proceeding against Debtor, any act to obtain possession of property of the estate, or any act to enforce any lien against the property of the estate.

5. The Debtor is managing her affairs as a Debtor-In-Possession pursuant to 11 U.S.C. §1107 and §1108. No trustee or examiner has been appointed in the Debtor's case at this time.

6. No unsecured creditors committee has been appointed in this case at this time.

7. The first meeting of creditors was held, pursuant to 11 U.S.C. §341, on December 8, 2008.

## BACKGROUND AND FACTS

8. That on or about February 1, 2005, Debtor did execute a Retail Installment Contract and Security Agreement in favor of AMHS and secured by the following real and personal property:

> A legal description of a 7.77, more or less, acres of land being located in part of the Southeast Quarter of the Northeast Quarter and part of the Northeast Quarter of the Southeast Quarter of Section 7, Township 8 South, Range 7 West, Panola County, Mississippi.
>
> Begin at the Southeast Corner of Section 7, Township 8 South, Range 7 West; thence South 89 degrees 00 minutes 18 seconds West 29.00 feet to a point; thence North 00 degrees 37 minutes 24 seconds West 3860.79 feet to a point; thence South 88 degrees 45 minutes 19 seconds West 672.20 feet to the True Point of Beginning; thence continue South 88 degrees 45 minutes 19 seconds West 200.09 feet to a point; thence South 00 degrees 30 minutes 27 seconds West 1683.12 feet to a point in the northerly right-of-way of Rock Hill Road; thence South 85 degrees 18 minutes 44 seconds East 200.83 feet along said right-of-way to a point; thence North 00 degrees 30 minutes 27 seconds East 1703.86 feet to the point of beginning

containing 7.77, more or less, acres of land being subject to all codes, regulations, revisions, easements and right-of-way of record.

Along with a 2002 Southern Homes, 16'x80', Model SSA806, Serial No. SSDAL373221, 4-Ton Air Conditioner, and Skirting.

A copy of said Deed of Trust, Retail Installment Contract - Security Agreement and Certificate of Title in favor of AMHS is attached hereto as Exhibit "A", as though fully copied herein.

9. That Movant would further show the Court that it is not being adequately protected; that there is a balance due and owing of $29,727.41 on said account; and that said account is delinquent for the months of January 2008, February 2008, March 2008, April 2008, May 2008, June 2008, July 2008, August 2008, September 2008, October 2008, November 2008, and December 2008 for a total of $6,398.98. The monthly payments are $526.09. The interest continues to accrue. With no payment made by Debtor, post-conversion, Movant's financial position continues to erode. Movant also is entitled, to the extent allowed by 11 U.S.C. §506 as part of its secured claim, the amount of all attorney's fees and related costs and expenses incurred in connection with Debtor's bankruptcy case.

10. That Movant would further show the Court that the NADA value of the property is listed as $21,765.00. Debtor's Chapter 13 Plan lists the value of the collateral as $15,775.85. AMHS is not being adequately protected; that there is a balance due and owing of $29,727.41 on said account; and that said account is delinquent for the months of January 2008, February 2008, March 2008, April 2008, May 2008, June 2008, July 2008, August 2008, September 2008, October 2008, November 2008, and December 2008 for for a total of $6,398.96. The interest continues to accrue. With no payment made by

Debtor, post-conversion, Movant's financial position continues to erode. Movant also is entitled, to the extent allowed by 11 U.S.C. §506 as part of its secured claim, the amount of all attorney's fees and related costs and expenses incurred in connection with Debtor's bankruptcy case.

11. Movant would show that sufficient cause exists for the termination, annulment or modification of the automatic stay as provided in 11 U.S.C. 362 (d)(1) and 1301 because of the failure of the Debtor to make the payments as set forth above and because there is little or no equity in the property. Movant would urge the court to terminate, modify or lift the automatic stay and abandon the subject property from the estate of the Debtor so as to allow the Movant to pursue all remedies available to it under the terms and conditions of said Retail Installment Contract - Security Agreement in favor of AMHS, and applicable state law, including initiation of relevin proceedings. Movant further requests that any order remain in effect regardless of conversion to another Chapter. Movant further asks for attorney fees and court costs incurred.

**WHEREFORE, PREMISES CONSIDERED**, Movant, American Manufactured Housing Services, Inc. files this Motion and prays that the automatic stay afforded by 11 U.S.C. 362 and 1301 be terminated, modified or lifted, after notice and hearing, so as to allow Movant to pursue its remedies and to initiate replevin proceedings against the property which is subject to said Retail Installment Contract and Security Agreement in favor of AMHS, and for attorney's fees and costs incurred. Movant further prays for general and special relief.

**RESPECTFULLY SUBMITTED**, this the 16th day of January, 2009.

**American Manufactured Housing Services, Inc.**

PAGE 4 OF 5

/s/ Thomas M. McElroy

BY:_____

THOMAS M. McELROY, MSB #2543
Attorney for American Manufactured
Housing Services, Inc.

THOMAS M. McELROY, P. A.
Post Office Box 1450
301 North Broadway
Tupelo, MS 38802-1450

## CERTIFICATE OF SERVICE

I, Thomas M. McElroy, Attorney for American Manufactured Housing Services, do hereby certify that I have this day delivered via CM/ECF and/or First Class U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing *Motion for Relief from Automatic Stay and for Other Relief* to the following:

Robert Gambrell, Esquire
rgnd@gulfcoastlawyer.com
ATTORNEY FOR DEBTOR

R. Michael Bolen, Esquire
ustpregion05.ab.ecf@usdoj.gov
U.S. TRUSTEE

This the 16th day of January, 2009.

/s/ Thomas M. McElroy

THOMAS M. McELROY, MSB #2543

SECOND **DEED OF TRUST** MISSISSIPPI

**This Indenture**, made by and between (Landowner) Latoya Norwood Young

party of the first part; ~~Dooley~~ ~~Dick Moore, Inc.~~ J.D Barton Atty At Law, party of the second part, as Trustee; and
~~J.B. Barton atty. at law~~ Dick Moore, Inc. party of the third part, WITNESSETH:

That, for and in consideration of One Dollar cash in hand paid, the receipt of which is hereby acknowledged, and for the purpose of securing the payment of the indebtedness hereinafter described, the party of the first part does hereby convey and warrant unto the party of the second part, as Trustee, and his successors in trust, the following described real estate situated in the County of Panola and State of Mississippi, to-wit:

See Attachment "A" for a full Legal description.

```
2005  253
Recorded in the Above
Deed of Trust  Book & Page
02-02-2005  09:38:15 AM
James R. Pitcock
PANOLA COUNTY, MS 1ST DIST
```

This conveyance is made in trust, however, to secure the payment of $ 31,387.92, evidenced by that certain Security Agreement and Disclosure of Transaction, of even date herewith, executed by Latoya Norwood, as Debtor ("Debtor"), to Dick Moore, Inc., as Secured Party, pursuant to which Debtor has agreed to pay the aforementioned Indebtedness in 180 consecutive monthly installments, the first of which is due and payable on the 1st day of March, 19 2005, and any further sums which the party of the third part, or any holder or holders of the notes hereby secured may advance to take care of taxes, insurance, or prior encumbrances on the above described real estate, or any part thereof.

The party of the first part agrees to keep all of the taxes and special assessments on the above described land paid, and if he fails to to do, the holder or holders of the above described notes may pay said taxes and assessments and the amounts so paid, with interest at the rate of eight per cent per annum from date of payment to date of reimbursement, shall become a part of the indebtedness secured hereby.

The party of the first part agrees to keep the improvements on said property in a good state of repair, and to insure the same against loss by fire and tornado in some responsible insurance company approved by the party of the third part, or his assigns, for the insurable value thereof, with a regulation mortgagee's subrogation clause attached to each policy making said insurance payable in case of loss to the party of the third part as his interest may appear, and to deliver the policy or policies and renewal receipts therefor to said party of the third part. In case of the failure of the party of the first party to keep said buildings so insured, the party of the third part, or his assigns, may effect such insurance and the amount so paid, with interest at the rate of eight per cent per annum from date of payment to date of reimbursement, shall become a part of the indebtedness secured hereby.

NOW, THEREFORE, If the Debtor or the party of the first part shall pay all of the indebtedness secured hereby this conveyance shall be null and void and shall be released at his expense, but if Debtor or said party of the first part shall fail to pay Indebtedness or any part thereof, or the interest thereon, when due, or shall fail to pay the taxes and special assessments on said property prior to the date of sale thereof for delinquent taxes, or shall fail to pay all items due on account of insurance as provided herein, then all of the indebtedness secured hereby shall, at the option of the holder or holders of said security agreement, become due and payable, and the party of the first part hereby authorizes and fully empowers said trustee, or any successor in trust, upon any such default to proceed to sell the property hereinabove described to pay the amount then due hereunder. The sale of said real estate shall be made at the front door of any Court House in the County where any of said real estate is situated at the time of the sale, within legal hours, at public outcry to the highest bidder for cash, after the acting trustee has given notice of the time, place and terms of said sale according to the laws of the State of Mississippi governing sales of lands under trust deeds in force at the time the publication of said notice is begun. The acting trustee may sell said property without taking possession of the same, and is authorized to appoint an agent and auctioneer to make such sale in his absence, which sale shall be as valid as if made by said trustee.

From the proceeds of said sale the acting trustee shall first pay the cost of executing this trust, including a reasonable fee for himself and his attorney; then he shall pay any sums advanced by the party of the third part on account of taxes or insurance on said property; then he shall pay any balance of principal and interest which shall be due on the indebtedness secured hereby; and if any balance then remains in his hands he shall pay the same to the party of the first part, his heirs or assigns.

The party of the third part, or any holder of the above described notes, may at any time appoint another Trustee in the place and stead of the party of the second part, or any successor or successors in trust.

If more than one person joins in this instrument as party of the first part, it is agreed that whenever the words "party of the first part" occur they are to read as if written "parties of the first part."

In the event of any default in the payment of the indebtedness hereby secured, or in the performance of any of the covenants contained in this trust deed or said security agreement, the holder of the indebtedness secured hereby shall have the right to exercise any of the rights and remedies provided for herein or in said security agreement, either concurrently or in such order as such holder may elect; and the exercise of the rights and remedies provided in either of said security instruments shall not constitute a release or waiver of the other security instrument.

WITNESS the signature of the party of the first part, on this the 1st day of February, 19 2005.

_Latoya Norwood Young_
Owner of Real Estate

Spouse

Exhibit "A"

STATE OF Mississippi
COUNTY OF Panola } ss.

2005 254
Recorded in the Above
Deed of Trust Book & Page
02-02-2005 09:38:15 AM

Personally appeared before me, the undersigned Notary Public, in and for the State and County aforesaid, the within named Latoria Norwood Young who acknowledged that She signed and delivered the foregoing trust deed on the day and year therein mentioned as her voluntary act and deed.

Given under my hand and seal this the 1st day of February, 19 2005.

My commission expires:
My Commission Expires: March 19, 2005
Bonded Thru Dixie Notary Service, Inc.

Donna Hclngram
Notary Public

### DEBTOR'S CONSENT

(To be executed if Debtor(s) and owner of real estate are not one and the same)

Debtor(s) hereby agree(s) to all of the terms and conditions of the foregoing deed of trust, insofar as Debtor's rights could or might be affected thereby.

STATE OF _____
COUNTY OF _____ } ss.

_____

Personally appeared before me, the undersigned Notary Public, in and for the State and County aforesaid, the within named _____, who acknowledged that ___ he ___ signed and delivered the foregoing debtor's consent on the day and year therein mentioned as ___ voluntary act and deed.

Given under my hand and seal this the ___ day of ___, 19 ___.

My commission expires:

_____
Notary Public

TITLE INSURANCE is the only guaranteed protection against real estate title losses.

WITNESS my hand and official seal, this ___ day of ___ A.D. 19 ___, at ___ o'clock ___ M., and has been this day duly recorded in Trust Deed Record ___ Page ___.

_____, Clerk.

_____, Clerk of the Chancery Court and ex-officio Recorder for the County and State aforesaid, do hereby certify that the within instrument of writing was filed for record in my office on the ___ day of ___

STATE OF MISSISSIPPI
County of _____

FOR THE USE OF _____
Trustee

TO

FROM

TRUST DEED

AFTER RECORDING RETURN TO:
Dick Moore, Inc.
6505 Hwy 51 North
Millington, TN 38053

Attachment "A"

A Legal Description of a 7.77, more or less, acres of land being located in part of the Southeast Quarter of the Northeast Quarter and part of the Northeast Quarter of the Southeast Quarter of Section 7, Township 8 South, Range 7 West, Panola County, Mississippi.

Begin at the Southeast Corner of Section 7, Township 8 South, Range 7 West; thence South 89 degrees 00 minutes 18 seconds West 29.00 feet to a point; thence North 00 degrees 37 minutes 24 seconds West 3860.79 feet to a point; thence South 88 degrees 45 minutes 19 seconds West 672.20 feet to the True Point of Beginning; thence continue South 88 degrees 45 minutes 19 seconds West 200.09 feet to a point; thence South 00 degrees 30 minutes 27 seconds West 1683.12 feet to a point in the northerly right-of-way of Rock Hill Road; thence South 85 degrees 18 minutes 44 second East 200.53 feet along said right-of-way to a point; thence North 00 degrees 30 minutes 27 seconds East 1703.86 feet to the point of beginning containing 7.77, more or less acres of land being subject to all codes regulations, revisions, easements and rights-of-way of record.

Along with a 2002, So. Homes, 16x80, Model SS4806, Serial# SSIAL37322, 4 Ton Air Conditioner, and Skirting.

2005  255
Recorded in the Above
Deed of Trust  Book & Page
02-02-2005 09:38:15 AM
James R. Pitcock
PANOLA COUNTY, MS 1ST DIST


PANOLA COUNTY, MS 1ST DIST
I certify this instrument was filed on
02-02-2005 09:38:15 AM
and recorded in Deed of Trust Book
2005 at pages 253 - 255
James R. Pitcock
Mary Jo Foster, D.C.

## RETAIL INSTALLMENT CONTRACT - SECURITY AGREEMENT
The terms of the Contract are on both sides of this page.

Name(s): Latoya Norwood    S.S. No. 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    Acct. No. _____    S.S. No. _____

Address: 1445 Rock Hill Rd.
City: Sardis    County: Panola    State: MS    Zip: 38666

Proposed Location of Manufactured Home: 1445 Rock Hill Rd.    Tel. No. 662-487-2893

"I", "me", or "us" means all persons who sign this contract as buyer, jointly and severally, and "you" means the seller and any assignee. This contract will be submitted to American Manufactured Housing Services Inc. (AMHS) and/or it's assigns, a local office, and if approved it will be assigned to AMHS. On the date of this contract, I buy from you the manufactured home described below together with furnishings, equipment, appliances and accessories included in the manufactured home at the time of purchase (called "Manufactured Home"):

Description of Manufactured Home: New X  Used ___
TRADE NAME: So. Homes
YEAR 2002   MODEL SS 4806   Item ___   Serial # ___   Additional Accessories and Furnishings Item ___   Serial # ___
LENGTH 76-Flr   WIDTH 16'
SERIAL NO. BSDAL37322-1
Along with a Second Deed of Trust to 1445 Rock Hill Rd. Sardis, MS, 38666

I MAY PREPAY THIS CONTRACT IN PART OR IN FULL AT ANY TIME WITHOUT PENALTY.
If I do so, you will rebate to me the unearned portion of the Finance Charge computed according to the actuarial method. Under the actuarial method, the unearned portion of the Finance Charge is the difference between the original Finance Charge and the Finance Charge recomputed by applying the Annual Percentage Rate to the actual unpaid balances of the Amount Financed for the actual time the unpaid balances were outstanding as of the date of prepayment. No rebate check will be made if the amount of the rebate is less than One Dollar ($1.00).

I promise to pay you the amount financed together with a finance charge at the Annual Percentage Rate shown below until the debt is fully paid. I'll pay the amount financed together with a finance charge in installments as shown in the payment schedule. The Finance charge is figured on the assumption that I will make each payment exactly as scheduled. Early or late payments may affect the amount of finance charge I will pay.

### ITEMIZATION OF AMOUNT FINANCED:
Cash Price (including Sales Tax of $1,095.92) $ 33,328.92

CASH DOWNPAYMENT $ 3,300.00
Trade In (Year, Make, Model): na
Length na   Width na
Gross Value $ na   Liens $ na
(Seller to pay off)
Net Trade In Value $ 00.00
Total Downpayment $ 3,300.00
Unpaid Balance of Cash Price (1-2) $ 30,028.92
Amounts paid to others on my behalf:
a. Insurance Companies   583.00
(1) Property Insurance $ _____
(2) Home Service Insurance $ 00.00
(3) Mortgage Protection $ 00.00
b. Public Officials
(1) Certificate of Title $ 8.00
(2) Filing Fees $ 00.00
(3) Document Preparation Fee $ 00.00
c. To Atty Fees + Recording $ 768.00
d. To _____ $ 00.00
TOTAL (a plus b) $ 1,359.00
Unpaid Balance (3 plus 4) $ 31,387.92
Prepaid Finance Charge $ 00.00
Amount Financed (5 minus 6) $ 31,387.92

### INSURANCE:
Property Insurance on the Manufactured Home is required for the term of this contract. I have the right to choose the person through whom it is obtained. By checking the appropriate box below, I elect to buy the coverage indicated from you for the term and premium shown.

Type of Insurance         Term    Premium
__ Broad Form Comprehensive  00    $ 00.00
__ Mobile Home Owners       12 Mth  $ 583.00
                             00    $ 00.00

HOME SERVICE PROTECTION INSURANCE: Home Service Protection Insurance is not required for this contract or a factor in the approval.
Type of Insurance         Term    Premium
Home Service Protection    00    $ 00.00

DECREASING TERM LIFE INSURANCE: Mortgage Insurance is not required for this contract or a factor in its approval. If I elect mortgage insurance, the name(s) of the proposed insured(s) are:
Proposed Insured _____ Age ___
Proposed Insured _____ Age ___
This insurance may not pay off all of my debt and the exact amount of coverage is shown on my policy or certificate. My signature indicates my election to obtain mortgage insurance coverage for the term and premium shown.

Type of Coverage         Term    Premium
__ Single                 00     $ 00.00
__ Joint                  00     $ 00.00

Signature _____ Date _____
Signature _____ Date _____
(If joint coverage is desired, both proposed insureds must sign)

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost me | AMOUNT FINANCED The amount of credit provided to me or on my behalf | TOTAL OF PAYMENTS The amount I will have paid after I have made all payments as scheduled | TOTAL SALE PRICE The total cost of my purchase on credit including my down payment of $3,300.00 |
|---|---|---|---|---|
| 16.75 % | $ 54,563.88 | $ 31,387.92 | $ 85,951.80 | $ 89,251.80 |

Number of Payments 180   Amount of Payments $477.51   Monthly, Beginning MARCH 1, 2005

Security: I will give you a security interest in X the goods or property being purchased, X real property located at: 1445 Rock Hill Rd.
Late Charge: If a payment is more than 15 days late, I will be charged 5% of the unpaid amount (4% in Mississippi) of such payment, not to exceed $5.00.
Prepayment: If I pay off early, I will not have to pay a penalty. Assumption: Someone buying my manufactured home may, under certain circumstances, be allowed to assume the remainder of the contract on the original terms.
See contract terms on reverse side for additional information about nonpayment, default, required repayment in full before the scheduled date, and on prepayment refunds and penalties.

ASSIGNMENT: The foregoing contract is hereby assigned under the terms of the assignment on the reverse side.

Seller DICK MOORE, INC.
By _____ (Signature) Donna H. Ingram   Title _____
Seller's Address: 14410 Hwy 310 Como, MS
                  City        State

Signature of Buyer: Latoya Norwood
Signature of Co-Buyer: _____

Date of this Contract: JANUARY 1, 2005

## ADDITIONAL TERMS AND CONDITIONS

**SECURITY INTEREST:** I grant you a security interest under the Uniform Commercial Code in (1) the Manufactured Home and in all goods that are or may hereafter by operation of law become accessions to it, (2) any refunds of unearned insurance premiums financed on this contract, and (3) all proceeds of such Manufactured Home and accessions. This security interest secures payment and performance of this contract and all proceeds of additional debt arising because of my failure to perform any obligations under this contract and includes any contractual extension, renewals or modifications. Of real estate secures payment and performance of my obligations under this contract, I have signed a mortgage or deed of trust to further evidence this contract.

**PREPAYMENT:** I may prepay this contract in full or in part at any time without penalty.

**PROPERTY INSURANCE:** I agree to furnish a policy of insurance acceptable to Dick Moore, Inc., and include Dick Moore, Inc., as a lienholder even if contract is sold or assigned to another lienholder, to insure the Manufactured Home against physical damage for the term of the contract at my expense. The minimum coverage will be Broad Form Comprehensive in an amount equal to the actual cash value of the Manufactured Home. This policy will contain a loss payable clause to protect you (as your interest may appear), and provide for 10 day notice of cancellation to you. I have the right to choose the person through whom the property insurance is obtained. If the initial insurance policy for required insurance expires or is cancelled prior to payment in full of this contract, I must replace the coverage at my expense for the remaining term of the contract. Should I fail to maintain such coverage, you may, but are not obligated to, obtain such insurance coverage on my behalf. If you do so, the cost, plus interest at the highest Annual Percentage Rate allowed by law, will be added to my debt.

**DAMAGES:** Damages shall be limited to amounts paid by the customer. The customer expressly waives any claim to consequential or punitive damages in the event the contract is voided. The customer shall pay reasonable rent in the amount of 1/30th of the value of the home per month for all times the customer had possession of the home plus any depreciation.

**GUARANTY:** The words "I" and "my" refer to all Guarantors signing this guaranty. The words "you" and "your" refer to the Seller (or to the Holder of this contract if it is assigned). The word "Buyer" includes "Co-Buyer". I guaranty payment to you of all sums owed under this contract. If the Buyer fails to pay any money that is owed under this contract, I will pay it on demand without first requiring that you proceed against the Buyer, or that you perfect or ensure enforceability of the Buyer's obligation or security. I represent to you that this contract is genuine, legally valid and enforceable and I waive notice of its acceptance and any defaults thereunder. I agree to be liable thereunder even if you fail to protect your security interest, give the Buyer more time to pay one or more payments, compromise or release any rights against Buyer or any of the other Guarantors, refrain from suing the Buyer or any of the other Guarantors or from collecting on any security, or release any security. If I default under this guaranty and you refer it to an attorney for collection, I will pay your attorney's fees, court costs and disbursements. I have received a completed copy of this contract and this guaranty at the time of signing.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than fifteen (15) days late, I agree to pay a late charge of five percent (5%) of the unpaid amount (4% in Mississippi, not to exceed Five Dollars ($5.00). I agreed to pay any accrued but unpaid interest in one lump sum, on demand, if such accrued interest at any time equals or exceeds on an one-half tenth a scheduled payment. Except in the case of abandonment or other extreme circumstances, you may take no action to repossess or foreclose or to accelerate payment of the entire amount of the outstanding obligation until thirty (30) days after the postmarked date of a written Notice of Default and Right to Cure directed to me, and I will be allowed to cure the default during the aforesaid period. If I fail to cure the default in the time allowed, you may declare the entire unpaid principal balance immediately due and payable, or exercise any or all of my remedies as a secured party under the Uniform Commercial Code, including, without limitation, repossession. If I cure my default within the thirty (30) day period mentioned above, and subsequently default, I will not again be entitled to the Notice of Default and Right to Cure as set forth above. I EXPRESSLY WAIVE ALL RIGHT TO NOTICE FOLLOWING THE FIRST NOTICE OF DEFAULT. After giving me on Notice of Default and Right to Cure, you may proceed to the action to foreclose or accelerate payment of the entire outstanding obligation without giving me thirty (30) days to cure the default. In the event of default, I also agree to pay to you the following amounts: (a) reasonable attorney fees; (b) court costs and disbursements; and (c) costs incurred by you to peaceably repossess the manufactured home and foreclose on any real estate securing payment of the contract, including cost of possessing, storing, reconditioning, repairing, and reselling such manufactured home subject to the pertinent provisions of the Uniform Commercial Code.

**MISREPRESENTATION:** In the event of a material misrepresentation by the purchaser the contract will be held a breached by the purchaser. Such misrepresentations include but are not limited to the purchaser's financial condition, employment, income, marital status, dependents, delivery site, as represented in writing or orally.

**OTHER TERMS AND CONDITIONS:** I agree: (a) not to remove the Manufactured Home from the address shown on this contract unless I notify you in advance and receive your written consent; (b) not to sell the Manufactured Home without first obtaining your written consent; (c) that if the Manufactured Home is personal property, I will not let it become part of any real estate; (d) not to encumber or abandon the Manufactured Home or use it for hire or illegally; and (e) to pay promptly all taxes and any liens and encumbrances on the Manufactured Home. I state this is my principle residence and consent to the mortgage being indexed as subject to U.S. Bankruptcy Code section 1322(b) and not subject to modification and that the purchase price is equal to or less than the actual value.

**CROSS-COLLATERALIZATION AND POWER OF ATTORNEY:** I grant you, by this contract, a security interest in all other loan collateral obtained by myself with that is paid for or not and any other presently or previously pledged collateral. Further, I grant Dick Moore, Inc., and irrevocable power of attorney to take, to file, execute, sell, transfer, and/or do all things necessary to consummate and service this loan as long as there exists any contingent liability.

**CREDIT INFORMATION:** You may investigate my credit history and credit capacity in connection with opening and collecting my account and share information about me and my account with credit reporting agencies. You may sell, or otherwise furnish information about me, including insurance information, to all others who may lawfully receive such information. You may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent, to enable such agent to quote premiums to me and solicit my insurance business.

**ASSIGNMENT:** You may assign this contract to any person or entity. All rights granted to you under this contract shall apply to any assignee of this contract.

**WAIVER:** Waiver of any default shall not constitute a waiver of any other default. No term shall be modified, changed, or altered unless in writing and executed by one of your officers. This contract is the entire agreement between us and I agree that no representations, oral or implied, have been made to me to induce me to enter into this contract other than those expressly set forth in this contract.

**CHANGES IN CONTRACT TERMS:** You may make reasonable changes in the terms of this contract including but not limited to changes of the dates when payments are due, when the interest rate or payments amounts are changed and other changes, not substantially affecting my rights under this contract. Such changes will be effected by giving me notice before or after a change.

**WARRANTIES:** No warranties, expressed or implied, representations, promises or statements as to the condition, fitness or merchantability of the Manufactured Home have been made by you except as set forth in any separate written warranty delivered to me by you at the time this contract was signed. A statement as to your model is for identification only. No changes may be made in the requirements of this paragraph unless in writing and signed by you and me. If any part of this paragraph is not permitted by law, that part will be ineffective, but the remainder of the paragraph will remain in force.

**VALIDITY:** Whenever possible each provision of this contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this contract shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this contract. This contract shall be of no effect until and unless signed by me and you.
(See other side for Consumer's and Creditor's Signatures).

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS, OR SERVICES, OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## ASSIGNMENT BY SELLER:

**TO AMERICAN MANUFACTURED HOUSING, INC. (AMHI):**
With respect to this retail installment contract ("contract") signed by one or more buyers ("Buyer"), SELLER represents and warrants that: (1) Buyer's credit statement submitted herewith is completely accurate unless otherwise specified; (2) Buyer was legally competent to contract at the time of Buyer's execution of the contract; (3) this contract arose from the bona fide sale of the merchandise described in this contract; (4) the downpayment was made by Buyer in cash only, or otherwise apparent and no part thereof was loaned directly or indirectly by Seller to Buyer; (5) there is now owing on the contract the amount set forth herein; (6) this contract and any guaranty submitted in connection herewith is in all respect legally enforceable against each purported signatory thereof; (7) Seller has the right to assign this contract and thereby to convey good title to it; and (8) in accordance with Fair Credit Reporting Act, Seller has notified Buyer that this contract may be submitted to any AMHI Lender.
For value received, except for insurance renewals, collections, and commissions, Seller hereby assigns to AMHI all its rights, title and interest in this contract and the property which is the subject matter hereof, excluding additional collateral unless specifically assigned, and authorizes AMHI to do everything necessary to collect and discharge same. All the terms of any existing written agreements between Seller and AMHI governing the purchase of contracts are made a part hereof by reference, it being understood that AMHI relies upon the above warranties and upon said agreements in purchasing this contract.

# CERTIFICATE OF TITLE

## STATE OF MISSISSIPPI

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 56DAL373221 | SOUT | 2002 | GSO | TL | 0743140-01 |

| TITLE DATE | DATE OF FIRST SALE FOR USE IN MS ONLY | NO. OR. | NEW/USED | TYPE OF VEHICLE | PASS. OR GVW | |
|---|---|---|---|---|---|---|
| 08242005 | 01292005 | 00 | X | TLR | 000 | ORIGINAL |

**OWNER**
NORWOOD LATOYA
1445 ROCK HILL RD
SARDIS         , MS 38666

ODOMETER - TENTHS NOT INCLUDED
000000

**1ST LIENHOLDER (OR OWNER IF NO LIEN)**
AMERICAN MANUF HOUSING SERV
6565 HWY 51 NORTH
MILLINGTON    TN 38053

MO | DAY | YR
01/29/2005

**2nd LIENHOLDER**

**LIEN SATISFACTION —**
THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ (LIENHOLDER) _____ BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____, 20 ___

2ND LIEN _____ (LIENHOLDER) _____ BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____, 20 ___

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
24 DAY OF AUGUST 2005
05234900025         00055
                    STATE TAX COMMISSION

The Mississippi State Tax Commission hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests herein set forth and such liens or security interests as may subsequently be filed with the State Tax Commission. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER
13576082

VOID IF ALTERED